**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUFFOLK COUNTY DISTRICT COUNCIL OF CARPENTERS, AFL–CIO, Respondent.**

**Nos. 36, 37, Docket 31151, 31152.**

United States Court of Appeals Second Circuit.

Argued Sept. 21, 1967.

Decided Dec. 13, 1967.

penters) and Local 1205, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (Teamsters) violated section 8(b)(7) of the National Labor Relations Act, 29 U.S. C. § 158(b)(7), when they picketed the Island Coal and Lumber Corporation. The Board, adopting the recommendations of its trial examiner, ordered the unions to cease and desist from picketing Island for organizational or recognitional purposes, and to post the usual notices. The Teamsters voluntarily complied; the Carpenters did not. We have reviewed the record and find substantial evidence to support the Board's order. Therefore, we grant enforcement.

Island sells lumber and building supplies to home owners, building contractors, and others. Its approximately forty employees—including eleven or twelve truck drivers, eight yardmen and five millmen, or carpenters—are not union members, and Island has never had a collective bargaining agreement with any union. At 7:00 A.M. on Thursday, September 30, 1965, Guy Salvio, a Teamster representative, appeared at Island carrying a sign which declared:

EMPLOYEES OF THIS ESTAB-
LISHMENT ARE NON UNION
LOCAL 1205 IBT-AFL
ASK THESE EMPLOYEES TO
JOIN WITH THEM FOR:
BETTER WAGES
BETTER WORKING
CONDITIONS
JOB SECURITY

Three more pickets soon arrived. One carried a sign duplicating Salvio's; the other two represented the Carpenters with a sign stating:

NOTICE TO PUBLIC
CARPENTERS ON THIS JOB
ARE NOT PROTECTED BY
A COLLECTIVE BARGAINING
AGREEMENT
SUFFOLK COUNTY DISTRICT
COUNCIL of CARPENTERS

The picketing lasted through Island's business day—7:30 A.M. to 5:30 P.M.—

---

Lawrence J. Sherman, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N.L.R.B., on the brief), for petitioner.

· Ernest Fleischman, New York City (Delson & Gordon, Stephen F. Gordon, New York City, on the brief), for respondent.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

The National Labor Relations Board petitions to enforce its decision and order finding that the Suffolk County District Council of Carpenters, AFL-CIO (Car-

and continued each business day thereafter until an injunction brought it to a halt on December 3. Some changes in the picketing did occur: The Teamster sign was conformed to that of the Carpenters after only a few days; the pickets soon declined in number to two, one Carpenter and one Teamster, and then to only one—carrying both unions' signs in sandwich fashion.

The pickets were not content merely to parade their signs; from the very beginning they approached drivers making deliveries to Island. Thus, for example, on the first day of picketing, September 30, Salvio jumped on the running board of a vehicle of an Island supplier and spoke to its driver. An Island lawyer convinced the driver to deliver. The following day, however, another company's truck did not enter the lumber yard after its driver had talked to two pickets—one Carpenter and one Teamster—and then called his office for instructions. On the third day of picketing, still another supplier brought four loads of lumber to the yard; one driver, however, after speaking with Salvio, did not make his delivery. These are only a few of the many events described in the record which clearly establish the pattern of picketing conduct. The trial examiner found that after October 6, all trucks that came to the yard were stopped by pickets. Some completed delivery, but only after making a phone call.

The intention of the pickets to cut off deliveries evidenced itself in another way. Island has three store entrances: the front door on Route 112, a side door which opens onto the yard off Route 112, and a rear door on a driveway running from Robinson Avenue into the yard.[1] For the most part, picketing was limited to the front door and yard entrance on Route 112. But when trucks approached the Robinson Avenue entrance, the pickets moved over to the driveway in order to confront the drivers. As an Island lift driver put it, "They would only go to the other entrance if they would see somebody come in."

The results of the picketing were described by Island's Vice-President and general manager, C. D. Finger, Jr.:

Q. Before September 30th how did you get these supplies to the lumber yard? A. Well, most of it was delivered directly to the yard by truck.

Q. Now, after September 30th was there a change? A. Yes.

Q. Will you tell us what the change was? A. Well, a lot of suppliers wouldn't come through the picket line.

Q. Did the company have to do something? A. Yes. We had to send our own trucks out.

*　*　*　*　*　*

Q. What else did you do? A. We also had to use our own men to unload freight cars on weekends and Sundays.

Q. What else did you do? A. Well, in the main we had to use our own trucks to pick up this material.

Q. How much of your material did you get in that way from September 30th on? A. I would say we had to get by ourselves or unusual procedures about, I would say, about fifty per cent.

Of all the pickets, only Teamster Salvio went beyond picketing and stopping deliveries to obvious organizational activities. On the day before the picketing began, he spoke twice to an Island driver concerning the possibility of organizing Island employees. The next day, he spoke individually to three other employees on the same subject: "Why don't you let us organize you?" There is no evidence that any Carpenter picket made similar statements or that any Island carpenter was approached. Except for the Salvio incidents described here, no Carpenter or Teamster representative spoke to either Island or Island employees concerning organization.

1. The examiner found that the Robinson Avenue entrance was used only for deliveries. C. D. Finger, Sr., Island's president, testified, however, that all the store entrances were used by customers.

The picketing continued until December 3—well over thirty days—without the filing of an election petition. On November 19, 1965, following a charge filed by Island, the Regional Director issued a complaint which alleged that the picketing, without an election petition, was for a recognitional or organizational purpose in violation of section 8(b) (7). On December 3, following a full hearing, the United States District Court for the Eastern District of New York, Walter Bruchhausen, J., granted a temporary injunction against the unions, terminating the picketing. Thereafter, the trial examiner and Board each upheld the Regional Director's complaint, and the Board petitioned this court to enforce the Board's order against the non-complying Carpenters.

Section 8(b) (7) provides, in relevant part:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(7) to picket or to cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative * * *:.

\* \* \* \* \* \*

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided* * * *: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (in-cluding consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

 The section was enacted in 1959 as part of the Landrum-Griffin amendments to the National Labor Relations Act.[2] The principal requirement for an 8(b) (7) violation is that "an" object of the picketing be "forcing or requiring" the employer to recognize the picketing union as his employees' bargaining agent, or "forcing or requiring" the employees to organize as members of the union. Recognition or organization need not be the sole or principal object of the picketing; it is sufficient to make out a violation if one of the union's objects is within the statutory language. See NLRB v. Local 182, IBT, 314 F.2d 53, 58–59 (2d Cir. 1963); International Hod Carriers, Local 840 (C. A. Blinne Constr. Co. II). 135 N.L.R.B. 1153, 1167 n. 28 (1962). Once the requisite object is shown, a union picketing for more than thirty days without filing an election petition is violating the law unless its conduct comes within the second proviso of subsection (C). That clause permits picketing "for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization * * *." Here, again, the sole purpose need not be publicity; in fact, it could not be since the proviso is not called into play unless a recognitional or organizational object has already been discovered. See NLRB v. Local 3, IBEW, 317 F.2d 193, 198 (2d Cir. 1963); Local Joint Executive Board of Hotel Employees (Crown Cafeteria II), 135 N.L.R.B. 1183 (1962), petition to review denied sub nom. Smitley v. NLRB, 327 F.2d 351 (9th Cir. 1964). There is an exception to the proviso, how-

---

2. Labor-Management Reporting and Disclosure Act of 1959, Title VII, § 704(c), 73 Stat. 544, 29 U.S.C. § 158(b) (7) (C).

ever. Publicity picketing is not permitted if "an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods * * *."

Section 8(b)(7) was the product of intense conflict between competing interests. The resulting language is not notable for its clarity; it has been aptly described by this court as "confusing."[3] We need not concern ourselves with all the ambiguities that lurk within the section; the Carpenters' basic contention in this court is that there is no substantial evidence to support the Board's finding that "an object" of the Carpenters' picketing was recognition of the Carpenters or organization of Island's employees. If that finding is supportable, the fact that the Carpenters' picketing may also have been informational is not important because the picketing severely disrupted deliveries to Island. As a result, the exception to the "inelegant"[4] second proviso of section 8(b)(7)(C) comes into play, wiping out the protection which an informational purpose might otherwise provide. See Barker Brothers Corp. v. NLRB, 328 F.2d 431 (9th Cir. 1964). Compare San Diego County Waiters Local 500, 138 N.L.R.B. 470 (1962).

■ We are thus left with the question whether the Board's key finding concerning "an" object of the Carpenters' picketing was proper; that issue, as we pointed out in NLRB v. Local 182, IBT, 314 F.2d 53, 58 (2d Cir. 1963), is a question of fact. If all of the activities described above had been engaged in by only one union, the Board's finding would clearly be supported by substantial evidence; compliance by the Teamsters with the Board's order indicates their recognition that their conduct was prohibited by section 8(b)(7). However, respondent Carpenters stress that they engaged in only limited activities. It is true that the Carpenters were more circumspect than the Teamsters, but not sufficiently so. Respondent contends that there is "no evidence that the *Carpenters* induced any individual employed by any other person not to pick up, deliver or transport any goods * * *." However, one witness testified specifically that a Carpenter picket spoke to a truck driver. At numerous places in the record it appears that "pickets" spoke to drivers, sometimes even moving to the otherwise unpicketed Robinson Avenue entrance to intercept incoming trucks. Although it is not stated whether these pickets were Carpenters, the small number of pickets, and the presence of one specific reference, permits the inference that Carpenter pickets stopped drivers on other occasions than the one cited. In addition, the trial examiner found that after October 6 the pickets spoke to all drivers that came to Island; it is obvious that during the period when only one picket represented both unions, a Carpenter (as well as a Teamster) picket was addressing drivers.

■ Moreover, it was proper for the examiner to infer, as he did, an impermissible purpose from these attempts to stop deliveries.[5] See NLRB v. Local 182,

3. McLeod v. Chefs, Cooks, Pastry Cooks and Assistants Local 89, Hotel & Restaurant Employees, etc., Union, 286 F.2d 727, 729 (2d Cir. 1961).

4. Meltzer, Organizational Picketing and the NLRB: Five on a Seesaw, 30 U.Chi. L.Rev. 78, 90 (1962).

5. The examiner also found evidence of a proscribed object in the words on the Carpenters' sign—a position often adopted by the Board. See, e.g., Local 8280, UMW, 166 N.L.R.B. No. 8, n. 3 (1967);

Local 429, IBEW (Sam Melson), 138 N.L.R.B. 460, 462 (1962). However, this court has held that "the fact that the union carried signs expressly allowed by the statute should not be a basis for concluding that the union had a recognitional objective." McLeod v. Chefs, Cooks, Pastry Cooks and Assistants Local 89, Hotel & Restaurant Employees, etc., Union, 280 F.2d 760, 764 (2d Cir. 1960); accord, NLRB v. Local 239, IBT, 340 F.2d 1020, 1022–23 (2d Cir. 1965); NLRB v. Local 3, IBEW, 317 F.2d 193, 197 (2d

IBT, 314 F.2d 53, 58–59 (2d Cir. 1963); Samoff for and on Behalf of NLRB v. Hotel, etc., Employees, Local 568, 199 F.Supp. 265 (E.D.Pa.1961); Comment, 9 U.C.L.A.L.Rev. 666, 680–81 (1962); cf. Local 3, IBEW (on remand), 144 N.L.R.B. 5 (1963), enforced, 339 F.2d 600 (2d Cir. 1964). Such attempts demonstrate an intent to force both the employer and the employees into a position more conducive to union recognition or organization demands. See Cox, The Landrum-Griffin Amendments to the National Labor Relations Act, 44 Minn.L. Rev. 257, 267–68 (1959). The employer may suffer serious loss if he either cannot receive deliveries or must expend substantial special time and effort, because of the picketing, in going outside his usual operations to obtain essential materials. Recognition may be his only recourse if he wishes to maintain profitable operations. Similarly, the employees' choice whether or not to belong to the union cannot be freely exercised; organization with the picketing union may be necessary to ensure continuance of their jobs. This is the aspect of picketing which Congress specifically meant to control when it forbade "forcing or requiring" recognition or organization by picketing for more than "a reasonable period of time" without the filing of a petition for an election. See NLRB v. Local 3, IBEW, 317 F.2d 193, 199 (2d Cir. 1963); Meltzer, supra note 4, at 79–81.

■■ Therefore, although the Board was not required to conclude from these activities that the picketing was for recognition or organization,[6] it was free to do so. As to the Carpenters, this is enough under the substantial evidence test which they claim was not met. However, the Board also relied on the clear attempts of Teamster Salvio to organize

Island employees. On four separate occasions, Salvio spoke to Island employees concerning the possibility of organization. Although members of the Carpenters did not engage in similar acts, can Salvio's conduct be ascribed to them?

Schauffler v. Highway Truck Drivers & Helpers, Local 107, 230 F.2d 7 (3d Cir. 1956), presented a situation similar to this. In that case, two men were found to be acting for Local 107 even though they were not members. Each man had been present in the area of the Local's picket line on a number of occasions; their cars were at various times involved in the Local's activities. One of the men often spoke over a loud speaker at the picket site—once in the presence of a Local business agent. Three different times, at places removed from the picketing, one or both of the men caused employees of non-picketed employers to refuse to load or unload trucks operating despite the picketing. The court held that these events, coupled with the picket site relationship between the men and the Local, justified a finding that the activities of the men could be considered as evidence proving a violation by the Local of section 8(b) (4) (A) of the Act.

The facts here are, if anything, stronger. The Teamsters and the Carpenters joined together for two months to stop deliveries by Island's suppliers. They picketed in pairs and even shared a single picket. The apparent leader of the whole picketing effort was Teamster Salvio, who committed the organizational acts in question here. The Carpenters knew firsthand of at least some of the Teamsters' prohibited organizational conduct, yet the Carpenters did not attempt to make clear to Island or its employees that the acts of the Teamsters were without Carpenter sanction. Cf.

Cir. 1963). Since the other evidence of a proscribed object was substantial, the examiner's reliance on the sign was not prejudicial.

6. The Board has held active signal picketing permissible where the picketing was shown, on the whole record, to be con-

sistent with an explicit, stated objective which was neither recognitional nor organizational. See Houston Building Trades Council, 136 N.L.R.B. 321 (1962) (area standards picketing). Compare Cox, supra at 267, with Meltzer, supra note 4, at 92–93.

NLRB v. Fruit and Veg. Packers, etc., Local 760, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); Barker Brothers Corp. v. NLRB, 328 F.2d 431 (9th Cir. 1964); McLeod v. Chefs, Cooks, Pastry Cooks and Assistants Local 89, Hotel & Restaurant Employees, etc., Union, 280 F.2d 760 (2d Cir. 1960). In these circumstances, it was proper for the Board to look to Salvio's improper conduct as some evidence of the Carpenters' picketing objective. See also Shore for and on Behalf of NLRB v. Building etc., Trades Council, 173 F.2d 678, 682 (3d Cir. 1949); Retail Clerks, Local 324, 138 N.L.R. B. 478, 485–86 (1962), petition to review denied sub nom. Barker Brothers Corp. v. NLRB, 328 F.2d 431 (9th Cir. 1964).

Substantial evidence for the Board's findings having been found, we grant enforcement of the Board's order.