**Daniel SILVERMAN, Regional Director Region 2 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.**

**No. 86 Civ. 1629 (SWK).**

United States District Court, S.D. New York.

April 3, 1986.

David E. Leach, II, National Labor Relations Board—Region 2, New York City, for petitioner.

Ira A. Sturm, Manning Raab Dealy & Sturm, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Petitioner, the National Labor Relations Board ("Board"), has moved for a preliminary injunction pursuant to Section 10(*l*) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(*l*). For the reasons discussed below, this petition is denied and dismissed.

The Board seeks to have the respondent ("Local 3") enjoined from violating Sections 8(b)(4)(i), 8(b)(4)(ii)(B) and 8(e) of the Act. 29 U.S.C. §§ 158(b)(4)(i), 158(b)(4)(ii)(B) and 158(e). The thrust of the Board's contentions is that respondent has engaged in illegal secondary boycott activity. The underlying facts are essentially undisputed, and are summarized below.[1]

On November 13, 1985, Central Financial Systems, Inc. ("CFS"), filed a charge against Local 3 with the Board. CFS filed a second charge against Local 3 with the Board on January 6, 1986. In its charges, CFS alleged that on October 21, 1985 Local 3 informed its members who were employed by CFS not to perform any work for CFS at a job site where they would be required to work with employees of British Telecom ("BT"), a foreign corporation.

CFS installs and maintains a telephone-computer switching system for trading securities. This system is known as the ITS 8300 and was manufactured and sold to CFS by BT. CFS installed this system at the Bank of New York's Wall Street facility. On October 21, 1985, Gerry Meisel, a CFS employee and Local 3 member, performed work on the ITS 8300 at the Bank of New York's Wall Street facility. Meisel apparently performed this work along with a BT employee. The Board alleges that because of this, Local 3 caused CFS to discharge Meisel on October 22 or October 23, 1985. The Board further alleges that this was accomplished pursuant to an unlawful provision of the collective bargaining agreement between CFS and Local 3.

Although CFS filed its charge with the Board on November 13, 1985, the Board has not yet issued a complaint against Local 3. Moreover, the Board delayed in seeking relief from this Court until February 24, 1986—a delay in excess of three months. In addition, no administrative record has been put before the Court at this juncture.

Local 3, in answering the Board's petition for an injunction, contends that its members do not object to taking instructions from BT employees or to having BT employees perform work for CFS without Local 3 members present. Local 3 also contends that it is not attempting to prevent CFS from working with or doing business with BT. Rather, Local 3 simply objects to having its members work side by side with BT employees at any particular job site. Local 3 has pursued this policy at the request of the National Communications Union in London, England.

The foregoing facts are not vigorously disputed. The legal conclusions to be drawn from them, however, are vigorously contested by the parties. In passing upon an application for preliminary injunctive re-

---

**1.** The Court held a hearing at which only one witness was presented.

lief under Section 10(*l* ) the Court must consider:

> (1) whether the temporary injunctive relief would be "just and proper" in terms of general equitable principles and (2) whether there is "reasonable cause" for the Regional Director "to believe such [unfair labor practice] charge is true and that a complaint should issue," . . .

*McLeod v. Local 25, Int'l Brotherhood of Electrical Workers,* 344 F.2d 634, 638 (2d Cir.1965). The issuance of an injunction is an extraordinary remedy, however. *McLeod v. General Electric Company,* 366 F.2d 847, 849 (2d Cir.1966), vacated as moot, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967).

Under the foregoing standard, the Court concludes that the injunctive relief sought here is not "just and proper." In view of this, the Court does not reach the issue of whether the Board has reasonable cause to believe an unfair labor practice has occurred.

In determining whether the injunctive relief sought is just and proper, general equitable principles apply. *Danielson v. Local 275, Laborers Int'l Union of North America,* 479 F.2d 1033, 1036 (2d Cir.1973). *See also Danielson v. Int'l Brotherhood of Electrical Workers,* 509 F.2d 1371, 1375 (2d Cir.1975); *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union, I.L.G.W.U.,* 494 F.2d 1230, 1242 (2d Cir.1974).

In the instant case, the Board first learned of the conduct which it now seeks to have enjoined on November 13, 1985. Yet, the Board did not seek the extraordinary relief of a preliminary injunction until February 24, 1986: a delay in excess of three months. Such delay seriously, indeed fatally, undermines the Board's position that an injunction is necessary to protect against harm to the public.

It is a fundamental equitable principle that delay in seeking equitable relief presents grounds to deny such an application. *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985); *Danielson v. Int'l Brotherhood of Electrical Workers,* 509 F.2d 1371, 1375 (2d Cir.1975). In *Citibank,* the Second Circuit explained:

> Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.

*Citibank* at 276. Indeed, in *Citibank* the plaintiff had delayed in seeking injunctive relief for ten weeks. *Id.* at 274. In the instant case, the Board delayed for over three months in seeking injunctive relief. The Second Circuit's comment in an earlier case applies with equal vigor to the instant case:

> We feel justified, then, in taking appellant's failure to seek expedited review as a recognition that there is no real danger of irreparable harm to the public interest in the limited period until the Board rules in the pending unfair labor practice proceeding.

*Danielson v. Int'l Brotherhood of Electrical Workers,* 509 F.2d 1371, 1375 (2d Cir. 1975).

■ The Court also notes that in considering the need for injunctive relief, it is harm to the public generally, and not to CFS, which controls. The Second Circuit has explained:

> the purpose of 10(1) was *not* to prevent irreparable damage to the Employer but to protect the public interest in maintaining the free flow of commerce and to encourage collective bargaining.

*Id.* at 1375 (emphasis added and citation omitted.) The Board failed to produce any evidence which demonstrated potential harm to the public in the instant case.

In conclusion, a preliminary injunction would not be "just and proper" in the instant case. The Board's lengthy and unexplained delay in seeking such relief demonstrates that it is unnecessary. Accordingly, the Board's petition is denied and dismissed.

SO ORDERED.