Daniel SILVERMAN, Regional Director, Region 2 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

LOCAL 78, ASBESTOS, LEAD AND HAZARDOUS WASTE LABORERS, AFFILIATED WITH THE MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK AND THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Respondent.

No. 96 Civ. 9276 (JFK).

United States District Court,
S.D. New York.

Dec. 20, 1996.

National Labor Relations Board, Region 2, New York City (Geoffrey E. Dunham, Rita Lisko, Laura Matlow, of counsel), for Petitioner.

Mysak, Gorlick, Kravits & Listhaus, New York City (Andrew Gorlick, Barbara S. Mehlsack, of counsel), for Respondent.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

KEENAN, District Judge:

Before the Court is the petition of Daniel Silverman, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board (the "NLRB"), for a temporary injunction pursuant to § 10(*l*) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(*l*), pending final

adjudication of a charge before the Board brought by AIA Environmental Corp. ("AIA") against respondent Local 78, Asbestos, Lead and Hazardous Waste Laborers, Affiliated with the Mason Tenders District Council of Greater New York and the Laborers' International Union of North America, AFL–CIO ("Local 78" or the "union") in Case No. 2–CP–937. Specifically, Petitioner seeks an order enjoining Local 78 from picketing, threatening to picket, or causing AIA to be picketed at any AIA job sites where the object of the picketing is to force AIA to recognize or bargain with Local 78 or any other labor organization as the representative of its employees pending resolution of the NLRB matter.

Petitioner Silverman moved by Order to Show Cause on December 10, 1996 for the relief sought herein. The Court set December 13, 1996 as the date for an evidentiary hearing. Local 78 filed a memorandum of law in opposition to Petitioner's application on December 13, 1996. The parties thereafter informed the Court that there was no need or desire for an evidentiary hearing; thus, only oral argument was heard on December 13, 1996. Petitioner submitted reply papers on December 18, 1996. For the reasons that follow, the motion for a temporary injunction is granted.

### FINDINGS OF FACT

Petitioner Daniel Silverman, the Regional Director of the Second Region of the NLRB, brings this petition on the NLRB's behalf, pursuant to § 10($l$) of the NLRA, 29 U.S.C. § 160($l$). Petitioner seeks injunctive relief pending the final disposition of a matter before the NLRB in which AIA charges that members of Local 78 engaged in, and continue to engage in, unfair labor practices within the meaning of § 8(b)(7)(C) of the NLRA. AIA filed the charge with the NLRB on November 18, 1996.

The question for the Court is whether petitioner has reasonable cause to believe that Local 78's picketing of AIA job sites violated NLRA § 8(b)(7)(C) such that the issuance of a temporary injunction would be just and proper. The facts affecting this determination are largely undisputed and are as follows.[1]

Local 78 is a union having its principal office at 30 Cliff Street, New York, New York. It is a "labor organization" within the meaning of § 2(5) of the NLRA in that its purpose is, *inter alia*, to organize unrepresented employees and to represent its members with employers concerning wages, hours, and other terms and conditions of employment.

AIA is a New York corporation with offices at 20–29 38th Street, Astoria, New York. It is engaged in the business of asbestos removal, lead paint abatement, soil remediation, and the cleaning of underground storage tanks, and generates over $50,000 in income annually from customers located within and outside the State of New York. Although AIA has, in the past, entered into site specific agreements with certain unions, it is not a party to a collective bargaining agreement with any labor organization.

On March 1, 1996, a representative of Local 78, Pawell Kedzior, met with Emil Braun, President of AIA. At the meeting, Mr. Kedzior demanded that AIA recognize and enter into a collective bargaining agreement with Local 78 covering any and all work performed by AIA involving the removal, abatement, encapsulation, or decontamination of asbestos, lead, or other toxic or hazardous waste or materials in the five boroughs of New York and in Suffolk and Nassau counties. Mr. Braun refused Mr. Kedzior's demand on the basis that AIA's employees had expressed to him that they did not wish to be represented by Local 78. Mr. Braun also maintains that under the terms of the collective bargaining agreement Local 78 offered

---

1. In response to the petition, Respondent declined the opportunity to submit responsive affidavits and filed only a memorandum of law. Respondent also does not take issue with the facts asserted in Petitioner's moving papers.

In its reply papers, Petitioner submits additional evidence in the form of exhibits and affidavits. Because it would be inequitable to Respondent for the Court to consider this new evidence submitted in reply, the Court makes its findings of fact based solely upon the evidence submitted initially by Petitioner.

AIA, the corporation could not continue in business. *See* Braun Aff. ¶ 12.

In late July 1996, Local 78 representative Sal Speziale reiterated Mr. Kedzior's previous demand that AIA enter into a collective bargaining agreement with the union. Mr. Braun again refused the union's demand. Mr. Speziale then stated that the union would have to resort to "other methods" to change AIA's position.

In August 1996, Mr. Speziale and representatives of General Building Laborers Local 79, also affiliated with Mason Tenders District Council of Greater New York and the Laborers' International Union of North America, AFL–CIO ("Local 79"), together with approximately forty supporters of those labor organizations, picketed AIA at a job site on 180 Water Street, New York, New York, where AIA was performing asbestos removal work. The picketers blew whistles and screamed "union yes." Petitioner contends that the picketers also blocked entrances to the job site for one day.

Local 78 representatives Tim Warrington and Kazmir Proznuiuski, at AIA's job site at 180 Water Street, thereafter demanded of Bruce Carley, Senior Project Manager of AIA, that AIA enter into the collective bargaining agreement with Local 78. Mr. Carley responded that he was not in a position of authority to comment on that situation on AIA's behalf. Thereafter, on nearly every day in August 1996, Local 78 and Local 79 representatives approached Mr. Carley at the job site at 180 Water Street as well as at other job sites and told him that they would not cease their demands of him until AIA signed a collective bargaining agreement with Local 78.

Local 78 continued its demands of AIA through its representative Tim Warrington at an AIA jobsite at 535 Fifth Avenue in mid-August 1996. Mr. Warrington also sought to compel a representative of Axiom Real Estate Management, the company which had hired AIA to do asbestos removal, to remove AIA from the job by threatening to picket the jobsite if such action was not taken.

In September 1996, AIA entered into an asbestos removal contract with Northrup Grumman Corporation ("NGC") concerning premises in Bethpage, New York. By letter dated September 1996, Local 78's attorney, Andrew Gorlick, wrote to NGC, informing that corporation that the Mason Tenders District Council of Greater New York (the "Mason Tenders"), of which Local 78 is a part, sought a collective bargaining agreement with AIA. Mr. Gorlick further informed NGC that the Mason Tenders would not authorize the site-specific agreement AIA had requested in order to be permitted to work on the NGC project.

Also in September 1996, AIA began working on an asbestos removal project for Ahern Contractors Corp. at 33 West 42nd Street, New York, New York. Starting in October 17, 1996 and continuing to November 22, 1996, Local 78 and approximately twenty supporters and representatives, dressed in asbestos removal or "Tyvex" suits, picketed the main entrance to the job site. The picketers held a variety of signs, four of which read:

PLEASE DO NOT PATRONIZE. AIA DOES NOT HAVE A CONTRACT WITH LOCAL 78.

AIA WORKING NON–UNION

UNION YES

LOCAL 78

Local 78 did not file a petition under § 9(c) of the NLRA with respect to the picketing described above.

At the time Local 78 made its demands that AIA enter into the collective bargaining agreement, Local 78 did not represent a majority of AIA's employees. Nor are AIA employees currently represented by Local 78. Respondent expressly concedes that "at all times relevant to the determination that must be made by the Court . . . , its picketing of AIA at 33 West 42nd Street had a recognitional objective." Respondent's Mem. at 2.

### CONCLUSIONS OF LAW

Under § 10(*l*) of the NLRA, the Regional Director of the NLRB is required to seek injunctive relief from the district court if the director reasonably believes that a violation of the NLRA has occurred. *See*

29 U.S.C. § 160(*l*). Once such an application is made, it is then for the Court to determine (1) if the Regional Director has "reasonable cause to believe" that the labor organization engaged in an unfair labor practice and (2) if so, whether the unfair labor practice poses a real danger to the public interest such that issuance of the injunction would be "just and proper." *See Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d Cir.1980); *Ahearn v. Freight Drivers, Helpers, Dockmen and Allied Workers Local Union No. 375*, No. 92 Civ. 756S, 1992 WL 373537, at *5 (W.D.N.Y. 1992); *see also Danielson v. International Org. of Masters, Mates & Pilots, AFL–CIO*, 521 F.2d 747 (2d Cir.1975) ("In determining whether an injunction under § 10(*l*) should issue, it is well settled that the district court need not decide that an unfair labor practice has actually occurred but merely must decide whether the Board has reasonable cause to believe there has been a violation of the act."). In making this determination, the Regional Director's finding of "reasonable cause" is entitled to considerable deference. *See Danielson v. Joint Bd. of Coat, Suit & Allied Garment Workers Union, ILGWU*, 494 F.2d 1230, 1245 (2d Cir.1974). "With respect to issues of fact, the Regional Director 'should be given the benefit of the doubt,' and on questions of law, the Board's view should be sustained unless the court is convinced that it is wrong." *Kaynard*, 625 F.2d at 1051 (quoting *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 37 (2d Cir.1975) and citing *Danielson*, 494 F.2d at 1244 & n. 22).

### A. "Reasonable Cause"

■ With respect to the first issue of whether the Regional Director had reasonable cause to believe Local 78 violated the NLRA by picketing AIA's job sites, it is necessary to examine NLRA § 8(b)(7)(C). That section provides that it is an unfair labor practice for a labor organization to:

picket ... any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select

such labor organization as their collective bargaining representative, unless such labor is currently certified as the representative of such employees: (C) where such picketing has been conducted without a petition under § 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing....

NLRA § 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C). Thus, once it is shown that a labor organization engaged in picketing for more than thirty days without filing a petition under NLRA § 9(c), and that the purpose of the picketing was to force recognition of that labor organization by the targeted company's employees, the conduct falls within the scope of the prohibition set forth above. *See NLRB v. Suffolk County District Council of Carpenters, AFL–CIO*, 387 F.2d 170, 173 (2d Cir. 1967).

That does not necessarily end the inquiry, however, as subsection (C) contains two provisos exonerating conduct that otherwise meets the above description of picketing violative of § 8(b)(7)(C). The proviso relevant here, which will be referred to as the "publicity proviso," provides that

nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

NLRA § 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C).[2]

■ It is undisputed that Local 78's picketing was for the purpose—at least in part—of gaining recognition of the union by AIA. It is also undisputed that the picketing continued for more than thirty days after its commencement without Local 78 having filed a petition under NLRA § 9(c). Therefore, as Respondent concedes, the conduct Local 78

---

**2.** Petitioner concedes that the "unless" clause of this proviso is not applicable to the instant case.

134

engaged in clearly falls within the ambit of the prohibition contained in § 8(b)(7)(C). *See* Resp. Mem. at 5 ("Thus, Petitioner has demonstrated that there is reasonable cause to believe that [the] first two conditions ... required by the Court of Appeals court to demonstrate a violation of Section 8(b)(7)(C) are present.").

However, Respondent contends that its conduct nevertheless did not violate § 8(b)(7)(C) because its purpose for "picketing at 33 West 42nd Street, though recognitional in its ultimate objective, was to communicate with the public, including particularly the students of CUNY." *Id.* Although Respondent declined the opportunity to present evidence of its own in support of this contention, it argues that the Petition and supporting affidavits demonstrate Local 78's informational purpose.

■ At the outset, the Court notes that the picketing's recognitional component does not preclude a finding that the picketing falls within the protective scope of the publicity proviso. *See Suffolk County District Council of Carpenters, AFL–CIO*, 387 F.2d at 173 (to fall within second proviso, "the sole purpose need not be publicity; in fact, it could not be since the proviso is not called into play unless a recognitional or organizational object has already been discovered"); *NLRB v. Local 3, Int'l Bhd. of Electrical Workers, AFL–CIO*, 317 F.2d 193, 198 (2d Cir.1963) ("It does not necessarily follow that, where an object of the picketing is forcing or requiring an employer to recognize or bargain, the purpose of the picketing, in the context of the second proviso, is not truthfully to advise the public, etc.").

■ In order for the publicity proviso in subsection (C) to apply, the picketing must be "that which through the dissemination of certain allowed representations, is designed to influence members of the unorganized public, as individuals, because the impact upon the employer by way of such individuals is weaker, more indirect and less coercive." *Id.* at 198. The picketing must be such that "the elements of communication predominate." *Id.* at 199. By contrast, publicity picketing is *not* picketing that "communicates more than the limited information expressly permitted by the second proviso" (i.e., publicity designed to inform the public than an employer does not employ union workers or have a contract with a union) or that is "apparently [for] the purpose [of] advis[ing] organized labor groups or their members" as a signal for such groups to take economic action against the targeted employer. *Id.*

■ The Court concludes that the Regional Director had reasonable cause to believe that Local 78 violated NLRA § 8(b)(7)(C) by picketing AIA's job site at 33 West 42nd Street. Under the "reasonable cause" standard, the Court need only determine that there is a "reasonable possibility" that an unfair labor practice occurred. *See Kaynard v. Independent Routemen's Assoc.*, 479 F.2d 1070, 1072 (2d Cir.1973) (citing *McLeod v. Local 25, IBEW,* 344 F.2d 634, 638 (2d Cir. 1965)). That reasonable possibility exists here. As noted above, Local 78 concedes that its picketing had a recognitional objective. Indeed, this purpose is manifest from the union representatives' behavior. Upon the undisputed evidence, Local 78 representatives sought repeatedly to compel AIA to enter into a collective bargaining agreement and began to picket AIA's job sites only after AIA made clear that it would not enter *voluntarily* into the collective bargaining agreement proffered by Local 78. Thereafter, AIA continued to press its recognitional objective by making repeated demands of AIA representatives, including Bruce Carley, and by threatening AIA clients such as Axiom Real Estate Management to disturb the jobsite by picketing if AIA was not removed from the job.

Respondent's contention that the purpose of the picketing was to advertise truthfully to the public, including students of CUNY, that AIA does not have a contract with the union does not ring true given the evidence before the Court. Indeed, Respondent submits nothing to support its contention that Local 78 had such an informational objective. Although the information communicated by the four signs identified in the petition arguably falls within the scope of the publicity proviso of § 8(b)(7)(C), the Court believes that it would be ludicrous to assign that factor dis-

positive weight and to turn a blind eye toward Local 78's repeated, coercive behavior with respect to AIA. There is abundant evidence to support that the recognitional objective was the primary—and perhaps the sole—objective for picketing and that the picketing was not, therefore, for the relatively innocuous purpose of informing the public, as opposed to organized labor, that AIA does not have a contract with Local 78.

In light of these factors, the Court finds that the Regional Director had reasonable cause to believe that Local 78's picketing of AIA's job site at 33 West 42nd Street was in violation of § 8(b)(7)(C). This conclusion is amply supported by the evidence.

### B. "Just and Proper"

With respect to the second inquiry of whether the granting of an injunction would be "just and proper," there are no bright line rules. *See Danielson v. Local 275, Laborers Int'l Union of N. Am., AFL–CIO,* 479 F.2d 1033, 1036 n. 3 (2d Cir.1973). The Court is to be guided by general equitable principles. *Danielson v. International Bhd. of Electric Workers,* 509 F.2d 1371, 1375 (2d Cir.1975).

In the instant case, Petitioner sought relief relatively promptly after AIA filed the charge with the Board alleging an unfair labor practice by Local 78. *Cf. Silverman v. International Bhd. of Elec. Workers,* 634 F.Supp. 671, 673 (E.D.N.Y.1986). Petitioner has also provided evidence that Local 78 engaged in picketing designed to accomplish what the union could not accomplish voluntarily: to force AIA to enter into a collective bargaining agreement that neither it nor its employees apparently desire and which could force AIA out of business—by means that likely violated NLRA § 8(b)(7)(C). *See Douds v. International Longshoremen's Assoc.,* 242 F.2d 808, 811 (2d Cir.1957) (injunctive relief just and proper where refusal to counter "strong arm methods ... might well be construed as an invitation to others to flout the procedures adopted by the Board to give effect to the mandates of the statute"). Given its repeated efforts in this regard, it is not unreasonable to anticipate that, unless enjoined, Local 78 will continue to engage in prohibited conduct. In light of these factors, the Court concludes that issuance of an injunction to enjoin Local 78 from violating the NLRA pending the NLRB's decision on AIA's charges against Local 78 would be just and proper.

Respondent further contends that the injunction sought by Petitioner is overbroad. Petitioner seeks an order enjoining Respondent, pending final disposition of the matters before the Board, from "[i]n any manner or by any means, picketing, threatening to picket, or causing the employer to be picketed at all locations, including any of its job sites, where an object thereof is forcing or requiring the employer to recognize or bargain with the respondent, or any other labor organization, as the representative of its employees." Petition ¶ 7(1)(a). Respondent argues that such an injunction is impermissible because it would reach conduct that is not violative of § 8(b)(7)(C), such as picketing falling within the publicity proviso of that subsection. As the Court agrees that the injunction proposed by the NLRB could have the effect of reaching even permissible conduct, it shall accordingly narrow the scope of the injunction.

### CONCLUSION

For the reasons set forth above, the Court grants the petition for a temporary injunction pending the disposition of the charges before the NLRB. The parties are to inform the Court once there has been a final adjudication of that matter.

### ORDER

It is hereby ordered that as of December 20, 1996, at 4:00 p.m., Local 78, Asbestos, Lead and Hazardous Waste Laborers, Affiliated with the Mason Tenders District Council of Greater New York and the Laborers' International Union of North America, AFL–CIO, by its representatives or those acting on its behalf, pending the final adjudication of the charges filed by AIA against Local 78 in Case No. 2–CP–937, are restrained from in any manner or by any means, picketing, threatening to picket, or causing AIA to be picketed at all locations, including any of its

job sites, where the nature and/or purpose of that picketing is violation of § 8(b)(7)(C).

**SO ORDERED.**