Alvin BLYER, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL—CIO, Respondent.

No. 99–CV–2077 (FB).

United States District Court, E.D. New York.

April 27, 1999.

Alvin Blyer, Regional Director, Region 29, National Labor Relations Board by

Sharon Chau, Board Agent, Brooklyn, NY, for petitioner.

Norman Rothfeld, New York City, for respondent.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

The petitioner brings this application for a preliminary injunction, pursuant to section 10(1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(1), pending final disposition of the matter involved herein, for alleged recognitional or organizational picketing by respondent Local Union No. 3, International Brotherhood of Electrical Workers, AFL—CIO ("Local Union No. 3"), in violation of section 158(b)(7)(A) of the Act.[1] An evidentiary hearing was held by this Court on April 21, 1999.

The facts in this case are relatively straightforward. The employer, Genmar Electrical Contracting ("Genmar"), is an electrical contractor whose approximately sixteen employees have recently obtained union representation from United Construction Trades & Industrial Employees International Union ("UCTIU"). Specifically, in late October of 1999, Genmar employees signed union authorization cards, and subsequently a collective bargaining agreement between Genmar and UCTIU went into effect on November 3, 1999. Since on or about March 31, 1999, Local Union No. 3 has had a few people picketing Genmar at the site of its current contracting work, with signs that read, in essence, "Join Local 3 for Better Working Conditions."

The Second Circuit has held that,

[i]t is beyond any question that the role of a district court in a Section 10(1) proceeding is not to adjudicate the merits of the alleged violation, but rather to decide whether the Regional Director had *reasonable cause* to believe that the respondent has violated the Act. Reasonable cause has been interpreted to mean that there must be a 'reasonable possibility' that the Board will sustain the unfair labor practice charge. That the Court's function is so circumscribed has been held in a number of cases.

*Kaynard v. Independent Routemen's Assoc.*, 479 F.2d 1070, 1072 (2d Cir.1973) (emphasis added) (internal citations omitted). In addition to "reasonable cause," the Court must also determine "whether the temporary injunctive relief [requested] would be just and proper in terms of general equitable principles." *Danielson v. Int'l Bhd. of Electrical Workers*, 509 F.2d 1371, 1375 (2d Cir.1975) (internal citations and quotations omitted).

■ The Court finds that there is reasonable cause to believe that the UCTIU has been duly certified, and recognized by Genmar as the lawful representative of its employees. *See* 29 U.S.C. § 158(b)(7)(A). Therefore, the key question here is whether an object of Local Union No. 3's picketing was one of "forcing or requiring an employer to recognize or bargain with [Local Union No. 3] as the representative of his employees, or forcing or requiring the employees ... to accept or select [Local Union No. 3] as their collective bargaining representative...." 29 U.S.C. § 158(b)(7). In defining "an object," the Second Circuit has held that " '[r]ecognition or organization need not be the sole or principal ob-

1. Section 158(b)(7)(A) of the Act states, "It shall be an unfair labor practice for a labor organization or its agents—

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to ac-

cept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under 159(c) of this title."

ject of the picketing; it is sufficient to make out a violation if *one* of the union's *objects* is within the statutory language.'" *Don Davis Pontiac, Inc. v. NLRB,* 594 F.2d 327, 332 (2d Cir.1979) (emphasis added) (citing *NLRB v. Suffolk County District Council of Carpenters, AFL—CIO,* 387 F.2d 170, 173 (2d Cir.1967)). In defining "forcing or requiring," the Second Circuit has held that such language "refers to the intended effect of the picketing, not the manner in which the picketing is carried on...." *NLRB v. Local 239, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 289 F.2d 41, 44 (2d Cir.1961).

Local Union No. 3 argues that the intended effect of their picketing is simply to recruit Genmar employees to work as electricians for Local Union No. 3 contractors. The argument is plainly disingenuous. In the first place, the Second Circuit has specifically recognized that picket signs exhorting employees to join a particular union for improved wages and working conditions can have "a clearly recognition-organizational purpose." *NLRB v. Local 239,* 289 F.2d at 43 ("Local 239 ... wants the employees of Stan–Jay ... to join them to gain union wages, job security and working conditions"). Such signs stand in contrast to permissible informational picketing signs. *See, e.g., NLRB v. Local 239, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America,* 340 F.2d 1020, 1021–23 (2d Cir. 1965) (picketer's sign, *inter alia,* "To the Public Please Be Advised Abbey Auto Parts is Non–Union," found to be "informational rather than coercive"); *National Labor Relations Board v. Local 3, Int'l Bhd. of Electrical Workers, AFL—CIO,* 317 F.2d 193, 195–200 (2d Cir.1963) (picketer's sign, *inter alia,* "Electricians working for Picoult on this job receive substandard wages and inferior working conditions," (uppercase omitted) found to be potentially informational); *McLeod v. Chefs, Cooks, Pastry Cooks and Assistants, Local 89, Hotel and Restaurant Employees and Bartenders Int'l Union, AFL—CIO,* 280 F.2d 760, 762, 764–65 (2d

Cir.1960) (picketer's sign, *inter alia,* "To the Public The Stork Club does not have a Contract With Chefs, Cooks, Pasty Cooks & Asst's Union Local 89 AFL—CIO," found to be informational).

Second, given the relatively small number of UCTIU members employed by Genmar, it would not take many defectors to create an unstable labor scenario. Moreover, the timing of the picketing has· a retaliatory odor, coming shortly after Genmar recognized the newly formed UCTIU as the employees' bargaining representative and entered into its first collective bargaining agreement with the new union.

In light of the recognitional-organizational character of the picket signs, coupled with the particular realities of this case, it is "reasonably possible" to believe that the ultimate fact-finder will conclude that the intended effect of the picketing was to induce Genmar's employees to switch their union affiliation and, consequently, to require Genmar to recognize Local Union No. 3 as its employees' bargaining representative. Hence, there is "reasonable cause" to believe that Local Union No. 3 is engaging in an unfair labor practice.

■ Turning to the second determination that the Court must make, the Court concludes that temporarily enjoining Local Union No. 3's picketing would be just and proper. *See Silverman v. Local 78,* 958 F.Supp. 129, 134 (S.D.N.Y.1996) ("there are no bright line rules" regarding whether granting injunction would be just and proper); *Seeler v. Int'l Union of Operating Engineers, Local 17(c),* No. 86–CV–287E, 1986 WL 4683, at *3 (W.D.N.Y. April 18, 1986) (the Second Circuit has stressed the "equitable discretion" of the district courts in determining what is just and proper) (citing *Danielson,* 509 F.2d at 1375 (2d Cir.1975)). Not only does petitioner have reasonable cause to believe that the picketing is an unfair labor practice, but the picketing appears to be disrupting work at Genmar's current work site, insofar as it has been represented to the Court by Genmar's attorney, without

objection, that other trades have refused to cross the picket line.

Accordingly, it is hereby ordered that petitioners' request for a preliminary injunction is granted, in that Local Union No. 3's officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with it, pending the final disposition of the matters involved herein before the NLRB, are enjoined from in any manner, or by any means picketing or causing to be picketed, or threatening to picket or cause to be picketed Genmar, where an object thereof, such as represented by the picketing in the present case, is forcing or requiring Genmar to recognize or to bargain with Local Union No. 3 as the representative of Genmar's employees, or forcing or requiring the Genmar's employees to accept or select Local Union No. 3 as their collective-bargaining representative, where Genmar has lawfully recognized in accordance with the Act, UCTIU, a labor organization, and a question concerning representation may not be raised under section 159(c) of this Act.

**SO ORDERED.**