**CITIBANK, N.A. and Citicorp, Plaintiffs-Appellees,**

v.

**CITYTRUST and Citytrust Bancorp, Inc., Defendants-Appellants.**

No. 782, Docket 84–7959.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1985.

Decided March 4, 1985.

Armand Cifelli, Bridgeport, Conn. (Cifelli, Frederick & Tully, Bridgeport, Conn., Jerry J. Strochlic, Sage Gray Todd & Sims, New York City, of counsel), for defendants-appellants.

Thomas P. Dowling, New York City (John F. Sweeney, Joseph A. Calvaruso, Dickerson M. Downing, Mitchell E. Radin, Morgan, Finnegan, Pine, Foley & Lee, New York City, Alfred F. Rohls, Assistant Vice President of Citibank, N.A., New York City, of counsel), for plaintiffs-appellees.

Before MANSFIELD, PRATT, and JOHN W. PECK of the United States Court of Appeals for the Sixth Circuit, sitting by designation, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The issue before us is whether the district court properly granted preliminary injunctive relief prohibiting the defendants, Citytrust and Citytrust Bancorp, Inc., from

using the name "Citytrust" in identifying or referring to their recently established Long Island office, or to any other offices which they might establish in New York State in the future. 596 F.Supp. 369. Since the evidence before the district court was insufficient to establish that the plaintiffs, Citibank N.A. and Citicorp, would suffer irreparable harm in the absence of an injunction pending trial of the underlying trademark claims, we vacate the preliminary injunction and remand for further proceedings.

## BACKGROUND

Plaintiff Citibank, a national bank headquartered in New York State, was first chartered in 1812 as "City Bank of New York". It continued to use that name or variations thereof—including "The National City Bank of New York", "The First National City Bank of New York", and "First National City Bank"—through the adoption in 1976 of its current legal name, "Citibank, N.A.". Citibank currently does business in all fifty states and numerous foreign countries, and offers a full line of consumer and commercial banking services. It claims to be the largest bank in the world. Citibank has obtained federal and state registrations for the name, "Citibank", and for more than twenty additional names using the "Citi" prefix, such as "Citiquote", "Citicash", "Citibanker", "Citiphone", "Citipak", "Citilights", and "Citiwheels". Citibank is a wholly-owned subsidiary of plaintiff Citicorp, a bank holding company.

Citytrust, a small, localized banking association, is chartered under the laws of the state of Connecticut. It, too, provides a range of commercial and consumer banking services, although on a smaller scale than Citibank. First established in 1854 as "Bridgeport City Bank", Citytrust began using the words "City Trust" as part of its legal name in 1929 and continued that use through 1971. At that time, Citytrust became a national bank and operated under the name "City National Bank of Connecticut" until 1977. It claims to have continued to use the words "City Trust" to identify itself and its services while it was a national bank. When it reverted to state bank status in 1977, it adopted its current legal name, "Citytrust". Citytrust is a wholly-owned subsidiary of defendant Citytrust Bancorp, Inc., a bank holding company.

Citibank and Citytrust have engaged in a substantial amount of business with each other over the past four decades. The relationship began in 1940 when Citytrust established a correspondent banking account with Citibank. Among other things, Citytrust has sold Citibank traveler's checks and has engaged Citibank's consulting services to assist in the operation of Citytrust.

Until 1984, Citytrust offices were located only in Connecticut. In the July/August 1983 issue of *Business Advance*, a publication directed to business, financial, and industrial communities on Long Island, an article reported that Citytrust was "entering the Long Island market and making its expertise available to companies in this area." Citytrust's decision to establish a commercial lending office on Long Island was announced in the December 6, 1983 issue of *Newsday*, a Long Island newspaper of general circulation. The Long Island office opened in May 1984 in Melville, New York. In response to an inquiry by Citibank in late June 1984, a Citytrust official stated that the office had opened or was in the process of opening.

More than ten weeks later, plaintiffs filed the instant complaint alleging violations of § 32 of the Lanham Act, 15 U.S.C. § 1114 (infringement of federal service marks and trademarks); § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (false designation of origin); § 368–b of the New York General Business Law (infringement of trademarks registered in New York); § 368–d of the New York General Business Law (injury to business reputation and dilution); unfair competition and infringement of common law trademark rights. On these theories plaintiffs sought damages and a permanent injunction barring defendants from any use of the name "Citytrust" anywhere.

Plaintiffs then moved for a preliminary injunction to enjoin defendants from using the name "Citytrust" in identifying or referring to the Melville office, or to any other offices subsequently established in New York State. They also sought an order prohibiting the defendants from increasing the type, frequency, or prominence of any media advertising in the state of New York above that existing prior to the opening of the Melville office.

After a hearing on October 22, 1984, the district court granted the requested preliminary relief. The court modified this order on November 7, 1984 by deleting the prohibition against defendants' media advertising, leaving intact the injunction against use of the name "Citytrust" in any manner whatsoever in identifying or referring to the Melville office or to any other offices which defendants now or in the future may establish in New York State.

On November 13, 1984, Citytrust filed a notice of appeal from the modified order and sought a stay of the injunction pending appeal. After denial of the requested stay by the district court, City Trust, on Dec. 11, 1984, requested that we stay the preliminary injunction pending appeal. On December 18, 1984, we denied the motion for a stay and expedited this appeal.

## DISCUSSION

■ To obtain a preliminary injunction in this circuit, the moving party has the burden of showing " '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2nd 42, 45 (2d Cir.1983) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). On review after an evidentiary hearing, we must accept the district court's findings of fact unless they are "clearly erroneous", *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S.

844, 855, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982) (citing Fed.R.Civ.P. 52(a)), and the ultimate question before us is whether the district court abused its discretion in issuing the preliminary injunction, *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 315 (2d Cir.1982).

" 'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " *Bell & Howell: Mamiya Co.*, 719 F.2d at 45 (*quoting* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 431 (1973) (footnote omitted)). In the instant case, after an extensive analysis culminating in a determination that plaintiffs were likely to succeed on the merits, the district court set forth its sole consideration of irreparable harm in these words:

Having determined that the plaintiffs are likely to succeed on the merits given the likelihood of confusion, irreparable harm "almost inevitably follows." *Omega Importing Corp. v. Petri-Kine Camera Company*, 451 F.2d 1190, 1195 (2d Cir. 197[1]).

■ Under the circumstances of this case, we think this perfunctory comment provided insufficient consideration to the factor of irreparable harm. The district court did not even make an explicit finding on the point. Even if we were to agree that plaintiffs' likelihood of success is as clear as the district court concluded, on this record plaintiffs still failed to establish the irreparable harm essential to entitle them to the extraordinary relief of a preliminary injunction.

*Omega Importing*, relied upon by the district court to support its implicit finding of irreparable harm, is distinguishable. There, the plaintiff sought a temporary injunction restraining the defendant from importing cameras into the United States bearing a tradename identical to that carried on plaintiff's cameras. The court noted that "[w]here there is, then, such high probability of confusion, injury irreparable

in the sense that it may not be fully compensable in damages almost inevitably follows." 451 F.2d at 1195. However, the use of identical names on small products sold by many merchants, as in *Omega Importing*, presents a picture far different from the instant case. Here, we have not identical, but merely similar names, used by long established banking institutions. Furthermore, the court's finding of irreparable harm in *Omega Importing* did not rest on the sweeping assertion quoted by the district court here; on the contrary, the *Omega Importing* panel pointedly stressed several factors in support of its finding: (1) it would be notoriously difficult to prove damages through the loss of sales due to infringement; (2) if the infringer's product was of poor quality a lasting but not readily measurable injury might be inflicted on plaintiff's reputation; and (3) it was unlikely, in view of the fact that the defendant had just emerged from a Chapter 11 reorganization, that defendant would be able to satisfy a substantial award. *Id.* Such factors are either not present in the instant case, or are not sufficiently established on the record to support a finding of irreparable harm.

■ Moreover, we have different considerations here—in particular, the effect of plaintiffs' delay in seeking relief—that render inoperative any presumption that the "almost inevitable" irreparable harm found in *Omega Importing* has indeed occurred in the circumstances of this case. Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action. *Gillette Co. v. Ed Pinaud, Inc.*, 178 F.Supp. 618, 622 (S.D.N.Y.1959). *Accord Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 609 (S.D.N.Y.1979). Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement. *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir.1984).

The district court did determine, relying on *Cuban Cigar Brands N.V. v. Upmann International, Inc.*, 457 F.Supp. 1090, 1096 (S.D.N.Y.1978), that Citibank's delay in seeking relief did not constitute laches and thereby bar relief. It noted that plaintiffs had opposed defendants' application to register the Citytrust trademark in 1980, that plaintiffs had commenced this action "promptly" after learning of the opening of the Long Island office, and that defendants would not be unduly prejudiced by granting the preliminary injunction.

■ In *Cuban Cigar Brands*, however, the question before the district court was whether laches or delay should prevent permanent relief—not preliminary relief as in the case before us—and irreparable harm was not even at issue. Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction. *Gillette Co.*, 178 F.Supp. at 622; *see Le Sportsac, Inc.*, 478 F.Supp. at 609.

Turning to the specific facts bearing on plaintiffs' delay and claimed harm, we note that they are not substantially in dispute. Citytrust's general intention to enter the Long Island market was announced in the July/August 1983 issue of *Business Advance*. Its decision to open the Long Island office was reported in the Long Island press on December 6, 1983. The office actually opened in May 1984, and Citibank was informed in late June 1984 that the office had opened or was in the process of opening. Yet, Citibank did not seek the injunction until September 14—more than ten weeks after it learned directly of Citytrust's plans, and more than nine months after it received notice through the press that Citytrust intended to open a Long Island branch.

Citibank claims that it was unable to verify that Citytrust had opened and was

operating a New York branch until mid-September 1984. Yet it would have taken little effort for Citibank to determine when and where the branch had opened, once it had received notice of Citytrust's intentions. It strains one's credulity to argue that a major financial institution such as Citibank, with all its resources and information sources, could not establish before mid-September 1984 that a potential competitor had opened a branch more than ten weeks earlier near the heart of Citibank territory. In short, Citibank's failure to act sooner "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Le Sportsac, Inc.*, 478 F.Supp. at 609.

Any sense of urgency is further undercut by additional facts. Long before this dispute over its Long Island branch had arisen, Citytrust had advertised its services in the New York media, apparently, as Citibank asserts in its appellate brief, as early as 1980. Citytrust placed ads in the *New York Times* in October 1982 advertising its "insured money market plus account". Similarly, Citytrust apparently advertised on New York City radio stations in either 1982 or 1983. Surely, if the opening of an office in Long Island with only three employees, whose primary activity was to solicit commercial loans, would cause irreparable harm to Citibank through dilution of its trademark, advertising in the New York Times and other media under the Citytrust logo should have caused an even greater fear of irreparable harm by the plaintiffs. Yet, aside from administratively contesting Citytrust's attempt to register the Citytrust mark under federal trademark laws, Citibank sought no relief against defendants until it began this suit in September 1984.

Furthermore, plaintiffs offer no objection to Citytrust's continuing to solicit New York business from Connecticut on a traveling salesman basis, as long as Cititrust does not establish an office in New York. Given the low profile of the Long Island office, it is unclear on this record what additional irreparable harm would result during the pendency of this action from the fact that the salesmen are surrounded by four walls.

Finally, plaintiffs' basic claim of likelihood of confusion between two banks operating under the names "Citytrust" and "Citicorp" is substantially eroded by plaintiffs' having sought and obtained permission in 1978 to operate in Connecticut under the name "Citicorp", thereby invading the established territory of Citytrust and creating the same likelihood of confusion of which plaintiffs now complain. If irreparable harm to Citicorp truly followed from a Citytrust bank operating nearby, then plaintiffs would not have voluntarily exposed their name to such a detrimental influence from 1978 until now.

In sum, Citibank's delay in seeking injunctive relief against the opening of the Citytrust's Long Island office, along with the minimal likelihood of increased harm to Citibank's trademark in view of Citytrust's increased advertising in New York media since at least 1982 and Citicorp's voluntarily having placed its mark in close proximity to Citytrust in 1978, forces us to conclude that plaintiffs failed to establish before the district court the irreparable harm necessary to authorize injunctive relief, and that granting the injunction constituted an abuse of discretion. We therefore reverse, vacate the order granting the preliminary injunction, and remand for further proceedings.