**JEWELERS OF AMERICA, INC., Plaintiff,**

v.

**Norayr AMIRGHANYAN a/k/a Nick Amirghan d/b/a International Jewelry Shows and IJS, Defendant.**

**No. 86 CIV. 4371 (PKL).**

United States District Court, S.D. New York.

April 1, 1987.

---

Martin Bressler, Robert Kruger, New York City, for plaintiff.

Certilman, Haft, Lebow, Balin, Buckley & Kremer, New York City (Barry I. Fredericks, of counsel), for defendant.

LEISURE, District Judge:

Defendant has moved for sanctions, including attorney fees, against plaintiff's former counsel on the ground that they brought a frivolous application for a preliminary injunction. Specifically, plaintiff contends that the motion, which the Court denied on July 16, 1986, was not well-grounded in law.

The standards governing a motion for sanctions under Fed.R.Civ.P. 11 have recently been discussed by the Court of Appeals for the Second Circuit. "[I]n imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer.... [R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986) (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)). Moreover, the Second Circuit has explained that "there is no necessary subjective component to a proper rule 11 analysis." *Id.* Instead, rule 11 analysis is objective: "[S]anctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper." *Id.* (citing *Eastway Construction*, 762 F.2d at 254). When an attorney's conduct violates this objective standard, the imposition of rule 11 sanctions is mandatory. *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1288 (2d Cir.1986).[1]

With respect to the application which is alleged in this case to violate the rule 11 standard, the law is well-settled. The "party seeking injunctive relief must establish

---

1. In an affidavit submitted in opposition to the motion for sanctions, one of plaintiff's former attorneys stated, "I am not at liberty to be specific, for obvious reasons, but I assure the Court that independent investigation of the facts and law were made" prior to the injunction application. Affidavit of Robert Kruger, Esq., sworn to on November 7, 1986, at 2. Subsequently, in a letter to the Court dated November 20, 1986, the same attorney offered to disclose, *in camera*, the nature of the investigation. The law is clear, however, that an attorney's subjective good faith will not serve as as "safe harbor" against the imposition of rule 11 sanctions. *Oliveri*, 803 F.2d at 1275. Thus, the fact that counsel may have undertaken a good faith inquiry will not provide a shield if a hypothetical "competent attorney could not have formed a belief after reasonable inquiry that the claims were 'warranted by existing law or a good faith argument for the ... reversal of existing law.'" *Grosvenor Marketing Ltd.*, 803 F.2d at 1288 (citing *Eastway Construction*, 762 F.2d at 254). In view of the following conclusions, the Court finds it unnecessary to entertain additional submissions.

that the injunction is necessary to prevent irreparable harm and that he is likely to prevail on the merits of the underlying controversy." *Arthur Guinness & Sons v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir.1984) (citation omitted). Alternatively, the moving party may "demonstrate the presence of sufficiently serious and substantial questions going to the merits as to make them a fair ground for litigation, and a balance of hardships tipping decidedly toward the movant." *Id.* *See also Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814, 821–22 (2d Cir.1986). It now becomes necessary to determine, without the benefit of hindsight, whether a competent attorney would have concluded after reasonable inquiry that plaintiff's application was "destined to fail." *Eastway Construction*, 762 F.2d at 254.

### Irreparable Injury

■ A showing of irreparable harm is " '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction....' " *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 431 (1973)). *See also Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir. 1967) (Irreparable injury is the "most significant condition" to support the granting of a temporary injunction.). Plaintiff brought its application by way of an order to show cause filed on June 4, 1986. The Court found, however, that plaintiff knew or should have known since September, 1985, that defendant was promoting a "New York Jewelry Show." Defendant now argues that plaintiff's counsel should have realized its lack of diligence would doom its application for preliminary relief. Memorandum of Law in Support of Defendants' Motion for Sanctions and Attorneys' Fees at 5–6 (hereinafter referred to as "Defendant's Memorandum").

The Second Circuit has made clear that delay in seeking a preliminary injunction "tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A.*, 756 F.2d at 276. "Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Id.* In *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985), the Second Circuit explained that "[l]ack of diligence, standing alone," may preclude the granting of preliminary injunctive relief. Yet, the Second Circuit has also indicated that *Citibank* does not establish a *per se* rule barring an injunction in circumstances involving substantial delay. *Church of Scientology International v. Elimira Mission of the Church of Scientology*, 794 F.2d 38, 42–43 (2d Cir.1986). In *Elmira Mission, Citibank* was interpreted as not abrogating the "traditional rule" regarding irreparable harm. *Id.* at 42. Accordingly, irreparable harm may be found where " 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.' " *Id.* at 43 (citations omitted). It thus cannot be said that plaintiff's application was "destined to fail" due to the substantial delay in seeking enforcement of its rights. *See Eastway Construction*, 762 F.2d at 254.

### Likelihood of Success

The Court concluded in refusing to issue a preliminary injunction that plaintiff could not demonstrate a likelihood of success on the merits because it could not establish an exclusive right to use generic or descriptive words such as "New York Show." Plaintiff's application sought protection for its trade name under § 43(a) of the Lanham Trade-Mark Act, New York's anti-dilution statute, and state common law. Plaintiff requested an injunction to prevent defendant from advertising its trade show in New York during July, 1986, as the "New York Jewelry Show" or the "New York Show" and from using the words "New York" or "Show" or "International," either singly or

in combination in its advertising. In addition, plaintiff sought to enjoin defendant from operating a retail jewelry trade show at a New York City hotel from July 26 through July 30, 1986.

"A trademark or trade name symbolizes the goodwill attaching to a business. Since it represents the reputation developed by its owner ... he is entitled to prevent others from using the mark...." *Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1059 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Courts have refused, however, to place arbitrary and unfair restrictions on the use of a geographically descriptive term such as the name used by plaintiff for its trade show. *See Long Island-Airports Limousine Service Corp. v. New York Airport Services Corp.*, 641 F.Supp. 1005, 1009 (E.D.N.Y. 1986). Yet, under § 43(a) of the Lanham Act, such a geographic name may be protected if secondary meaning can be established. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952–53 (2d Cir.1980). *Accord New York Airport Services Corp.*, 641 F.Supp. at 1010.[2] *See also* 1 J. McCarthy, *Trademarks and Unfair Competition* 620 (1984); *Madrigal Audio Laboratories, Inc.*, 799 F.2d at 824 ("[T]he degree of protection afforded a trade name depends upon the 'strength' of its secondary meaning."). *See generally American Optical Corp. v. North American Optical Corp.*, 489 F.Supp. 443, 450 (N.D.N.Y.1979) (Lanham Act trade name protection is to be broadly construed.). *Cf. American International Group, Inc. v. London American International Corp. Ltd.*, 664 F.2d 348, 352 (2d Cir.1981) (potential for confusion due to similarity of geographic names).

To prove secondary meaning, a plaintiff must overcome "vigorous evidentiary requirements." *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir.1985) (citation omitted). Relevant factors include: advertising expenditures, consumer studies linking a name to a source, sales success, unsolicited media coverage of the product, attempts to plagiarize the mark, and length and exclusivity of a mark's use. *Id. See also 20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 90 (2d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985). In this inquiry, which is ordinarily highly contextual, no single factor is determinative and every element need not be proved. *Pfizer Inc.*, 753 F.2d at 217. "The ultimate test for secondary meaning," however, is simply whether the term identifies " 'a *particular* source,' in which case it is protectable". *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 333 (2d Cir.1983) (citation omitted). Without the benefit of hindsight, the Court cannot conclude that plaintiff had "absolutely no chance" of demonstrating a likelihood of success on the merits of its claims. *See Oliveri*, 803 F.2d at 1275.

In summary, on the basis of an analysis which avoids hindsight and resolves all doubts in favor of plaintiff's former counsel, the Court finds no violation of the objective standard under Rule 11. *See Oliveri*, 803 F.2d at 1275.[3] Accordingly, defendant's motion is denied.

SO ORDERED.

---

2. New York common law also recognizes the principle that equitable relief may be granted to a party whose use of a descriptive word has created a secondary meaning. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 497 n. 1, 498–99 (2d Cir.1962). In addition, under New York's antidilution statute, General Business Law § 368–d, a trade name which has acquired a secondary meaning may be entitled to protection. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632–33, 369 N.E.2d 1162, 1166 (1977).

3. Defendant has also argued that an award of attorneys' fees is appropriate in this case under the "bad faith" exception to the American Rule. Defendant's Memorandum at 8. The Court, however, concludes that defendant has failed to satisfy the strict standard for a "bad faith" award. *See Oliveri*, 803 F.2d at 1272.