**CENTURY TIME LTD. and H. Stern Jewelers, Inc., Plaintiffs,**

v.

**INTERCHRON LIMITED and Alexander Rosenthal, Defendants.**

**No. 89 CIV 6440 (KC).**

United States District Court, S.D. New York.

Feb. 2, 1990.

James Oliff and Kirk Hudson, Oliff & Berrudge, Alexandria, Va., Milton Sherman, Kaye, Scholer, Fierman, Hays & Handler, Mark H. Sparrow, Jacobs & Jacobs, New York City, for plaintiffs.

Julius Rabinowitz, William Pelton, Kuhn & Muller, New York City, for defendants.

CONBOY, District Judge:

Plaintiff Century Time Inc. ("Century") is a Swiss manufacturer of watches marketed under the trademark Century®. Century manufactures watches with synthetic sapphire crystals and cases, which it calls its "Century Sapphire Collection." Plaintiff H. Stern Jewelers ("Stern") is a chain of retail jewelry stores. Stern is an exclusive licensee of certain of the watches in Century's Sapphire Collection, and is authorized to sell the watches under Stern's own name and proprietary logos. Defendant Interchron Limited ("Interchron") is a New York corporation that also manufactures and sells watches with synthetic sapphire crystals and cases under the Interchron® and Centier® trademarks. Defendant Rosenthal is the President of Interchron.

In late September of 1989, plaintiffs commenced this lawsuit alleging that the defendants have commenced manufacture and marketing of watches which misappropriate, dilute and infringe upon the trade dress of the line of watches in Century's Sapphire Collection in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and 1125(a); Sections 133, 349, 350 and 368-d of the New York General Business Law and the common law of unfair competition and trademark infringement. Although plaintiffs' complaint seeks permanent injunctive relief, plaintiffs, significantly, did not seek preliminary injunctive relief immediately upon the filing of the complaint. Defendants have continued, at their own risk, despite the initiation of the instant litigation, to produce and sell the accused watches, and the plaintiffs, despite assertions to the contrary, had to have been well aware of this fact.

On January 30, 1990, at 5:00 p.m., plaintiffs brought on an application for emergency relief, seeking the issuance of a temporary restraining order and a speedy scheduling of a preliminary injunction hearing.[1] We heard oral argument on the matter from both sides for over two hours and asked the defendants to submit papers in opposition by February 1, 1990, with any reply papers to be submitted by plaintiffs this date. Plaintiffs seek to have defendants temporarily enjoined from advertising, exhibiting and otherwise promoting and offering for sale and selling at the February 4-7, 1990 Jewelers of America Jewelry Show ("JA Show"), certain sapphire watches which it alleges imitate and copy Century's trade dress in its own Sapphire Collection.

We observe that plaintiffs, by their own admission, have known about the accused watches of the defendant since July of 1989, when they viewed them at a JA Show. We also note the existence of a companion case pending in this district between these same companies in which Interchron is seeking to have certain of Century's patents declared invalid. We further note that counsel to the parties in this action met with the Court at a status conference on November 13, 1989, wherein the feasibility of preliminary injunctive relief and settlement was discussed. We also observe that counsel and representatives

---

[1]. On the application of all the parties, the papers supporting and opposing the instant application have been placed under seal as they contain confidential information.

from both sides met and discussed modifications made by the defendants to their accused watches in an attempt to mollify the plaintiffs. These modifications were disclosed to the plaintiffs in September of 1989, but the plaintiffs and the defendants only discussed the modifications, and the plaintiffs only viewed the accused watches as modified, after the Court so recommended. This meeting took place on November 28, 1989. Plaintiffs state that after examining the accused watches as modified, they immediately concluded that the modifications were not acceptable, and they notified defendants that they "would proceed accordingly."

Plaintiffs did not, however, bring their application for injunctive relief until four working days prior to the opening of the next JA Show, a show at which, we conclude, plaintiffs had to know the defendants would present their lines of watches, in light of the latters' attendance at the past five JA Shows. Plaintiffs concede the importance of the JA Show—it is a place where contacts are made and deals are done. In view of the fact that plaintiffs had not sought temporary relief either upon the filing of the complaint or after they were shown the modified watches, defendants have prepared for the show by readying their inventory, demonstrated to the Court to have a substantial wholesale value, and sending out promotional material to approximately 300 companies.

The standards for obtaining a temporary restraining order or preliminary injunctive relief in this Circuit are well-established. Plaintiffs must show a) that they will suffer irreparable harm in the absence of injunctive relief and b) either 1) a likelihood of success on the merits or 2) sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of hardships tipping decidedly toward the plaintiffs. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). We could not possibly state, on this extremely limited record, that plaintiffs are likely to succeed on the merits of their case.[2] We do acknowledge, however, that plaintiffs have raised sufficiently serious questions going to the merits of the lawsuit. Notwithstanding this fact, plaintiffs have not demonstrated that the balance of hardships tips decidedly toward them. Indeed, we believe that the balance tips decidedly in Interchron's favor, in light of the chronology of the plaintiffs' knowledge of the accused products and its lack of action thereon. We have no doubt that plaintiffs must have recognized that, in bringing on their application for emergency relief only four working days prior to the trade show, if we were to grant their request for a restraining order, the defendants would be unable to seek review in the Court of Appeals. We also believe that if we were to grant such relief, defendants' would suffer serious economic consequences and their credibility and reputation in the industry would be extremely damaged. Furthermore, such an order, for all intents and purposes, would effectively resolve this litigation in plaintiffs' favor, without defendants having had either a proper hearing before us or the opportunity for appellate review. On the other hand, denial of plaintiffs' application cannot possibly harm the plaintiffs any more than whatever injury they perceived when they filed their complaint without seeking immediate remedial relief. We simply cannot tolerate tactical maneuvering, in injunction matters, whereby parties sit back and wait for what they believe to be timing most injurious to the procedural fairness for their adversaries.

---

**2.** We note that plaintiffs may have difficulties in proving that their product has acquired secondary meaning among the relevant consumer group and the likelihood of confusion as to the source of the goods, the elements required to succeed in a Section 43(a) claim under the Lanham Act. *E.G., Stormy Clime Ltd. v. Progroup,* *Inc.,* 809 F.2d 971 (2d Cir.1987). For example, defendants point out that in view of the private labelling, plaintiffs may have problems demonstrating that the public associates the goods with a *single* source. *Centaur Communications v. A/S/M/ Communications,* 830 F.2d 1217, 1221 (2d Cir.1987).

Furthermore, although we do not now decide the issue in light of our holding above regarding the balance of hardships, we recognize that plaintiffs, because of their delay in acting to preserve and protect their asserted rights, are unlikely to be able to demonstrate the requisite irreparable harm. For example, in *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985), the circuit court reversed a district judge's order granting a preliminary injunction, citing the lack of irreparable harm. The court held that "[s]ignificant delay in applying for preliminary injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Id.* In the *Citibank* case, the plaintiff had direct knowledge of the alleged infringement ten weeks prior to their seeking emergency relief. Here, the delay was more than two months, if we measure from the time the plaintiffs knew that the action was not going to be settled, and more than six months if we measure from the date they acquired direct knowledge of the alleged infringement.

Although we will not bar plaintiffs from seeking preliminary injunctive relief on another day in a manner that does not smack of the tactical maneuvering that we find here, we do caution the plaintiffs to carefully read *Citibank* and the other cases in this Circuit on delay cited in the defendants' brief prior to doing so. However, we note that although delay may indicate the absence of the kind of irreparable harm required to support a preliminary injunction, it may not rise to the level of laches which would bar the issuance of a permanent injunction. *Citibank, supra.* Accordingly, we believe that the defendants are well advised to inform customers purchasing the accused products of the fact of this litigation and the possible repercussions, a course they claim to be following.

In sum, in light of our conclusion that the balance of hardships does not tip decidedly in plaintiffs' favor, plaintiffs' application for a temporary restraining order is denied.

SO ORDERED.