CENTRAL POINT SOFTWARE,
INC., et al., Plaintiffs,

v.

GLOBAL SOFTWARE & ASSESSORIES,
INC., Defendant.

No. CV 93–2367.

United States District Court,
E.D. New York.

Aug. 3, 1994.

Farrell, Fritz, Caemmerer, Cleary, Barnosky and Armentano, P.C. by Dolores Fredrich, Uniondale, NY (McBride, Baker & Coles, Geoffrey G. Gilbert, Chicago, IL, of counsel), for plaintiffs.

Torino & Singer, P.C. by Charles A. Singer, Mineola, NY (Galgano & Belkin, Thomas Galgano, Hauppauge, NY, of counsel), for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Central Point Software, Inc. ("Central Point"), Computer Associates International, Inc. ("Computer Associates"), Datastorm Technologies, Inc. ("Datastorm"), Quarterdeck Office Systems, Inc. ("Quarterdeck"), Software Publishing Corporation ("Software Publishing"), Symantec Corporation ("Symantec"), Wordstar International, Inc. ("Wordstar"), and Executive Systems, Inc. d/b/a XTree Company ("XTree") (collectively, "plaintiffs"), computer software manufacturers, bring this action against defendant Global Software & Accessories, Inc. ("Global") alleging copyright infringement for violations of the Computer Software Rental Amendments Act of 1990, which amended § 109 of the Copyright Act, 17 U.S.C. § 109(b) (the "Act"). Plaintiffs seek injunctive relief and damages.[1] Presently before the Court is plaintiffs' motion for a preliminary injunction pursuant to § 502(a) of the Copyright Law, 17 U.S.C. § 502(a), and Rule 65 of the Federal Rules of Civil Procedure. For the reasons below, the motion is denied.

### I.  BACKGROUND

For purposes of this decision, the background can be summarized as follows. Plain-

---

**1.** Plaintiffs have elected to recover an award of statutory damages, instead of actual damages and profits, for all infringement involved in this action. *See* 17 U.S.C. § 504(c).

tiffs are in the business of developing and marketing computer programs recorded on the medium of magnetic disks, commonly referred to as "computer software," for use on microcomputers of the type commonly referred to as "personal computers" or "PC's." Plaintiffs claim they are the owners of copyrights in a number of computer software programs.

Defendant has been engaged in the business of selling and renting computer hardware, software and related accessories since at least November 1988. Defendant operates three stores, each of which is located in New York. The last of these three stores was first opened in July 1993.

Plaintiffs allege that defendant infringed their copyrights by the rental of their copyrighted software in violation of the Act's rental prohibition. The Act provides, in relevant part:

[U]nless authorized by the ... owner of copyright in a computer program (including any tape, disk or other medium embodying such program), ... [no] person in possession of a particular copy of a computer program (including any tape, disk or other medium embodying such program), may, for the purposes of direct or indirect commercial advantage, dispose of, or authorize the disposal of, the possession of that ... computer program (including any tape, disk or other medium embodying such program), by rental, lease, or lending, or by any other act or practice in the nature of rental, lease, or lending.

17 U.S.C. § 109(b)(1)(A). As for a person who violates the rental prohibition, the Act provides:

Any person who distributes ... a copy of a computer program (including any tape, disk or other medium embodying such program) in violation of paragraph (1) is an infringer of copyright under section 501 of this title and is subject to the remedies set forth in sections 502, 503, 504, 505, and 509.

*Id.* § 109(b)(4).

The Act, however, does not apply to the disposition of a copy of a computer program acquired before December 1, 1990. In this respect, the Act provides that it

shall not affect the right of a person in possession of a particular copy of a computer program, who acquired such copy before the date of the enactment of this Act [December 1, 1990], to dispose of the possession of that copy on or after such date of enactment in any manner permitted by section 109 of title 17, United States Code, as in effect on the day before such enactment.

Pub.L. 101–650, § 804(b). Thus, the Act does not prohibit rental of copies of computer programs acquired before December 1, 1990, only rental of those copies acquired on or after December 1, 1990.

After enactment of the Act, defendant continued to rent copies of computer software that it had acquired before December 1, 1990, as it is entitled to do under the Act. Any such transactions are not at issue in this case. What is at issue in this case is plaintiffs' claim that defendant has engaged in the rental of plaintiffs' copyrighted software and that defendant devised a scheme, shortly after the Act went into effect, to rent copies of computer software that the Act prohibits it from renting, *i.e.*, copies of computer software it acquired on or after December 1, 1990.

As for this purported scheme, plaintiffs allege that in March 1991, several months after the Act took effect, defendant implemented a "Deferred Billing Plan" for "sales" of computer software programs that the Act prohibited it from renting. Plaintiffs contend that defendant's Deferred Billing Plan is a disguised rental arrangement prohibited by the Act, and that, by this arrangement, defendant has "rented" plaintiffs' copyrighted software in violation of the Act. Plaintiffs seek a preliminary injunction preventing defendant from disposing of certain of their copyrighted software pursuant to defendant's Deferred Billing Plan.[2]

---

**2.** These computer software programs include certain of the allegedly copyrighted software identified in the complaint and certain allegedly copyrighted software not identified in the complaint. As for the latter, plaintiffs have now filed a motion to amend the complaint to add these

The Deferred Billing Plan is part of a marketing plan developed by defendant in March 1991, and is available to members of "Global's Software Rental and Deferred Billing Club." According to defendant's own explanatory brochure, under the Deferred Billing Plan, the customer is allowed to take the software home and use it for up to five days by leaving a "nonrefundable deposit" by credit card. The nonrefundable deposit, which defendant also refers to as a "restocking charge," represents a small portion of the software's purchase price. Only the nonrefundable deposit is actually charged to the credit card at that time, although, apparently, credit card approval is obtained for the full purchase price. The customer is provided a receipt indicating when the five-day period expires. In exchange, the customer is given the computer disk and a "users manual," but is not given the manufacturer's registration card at that time. If the customer returns the software for any reason within the five-day period, defendant keeps the nonrefundable deposit and the customer is not charged the balance of the purchase price. On the other hand, if the customer does not return the software within the five-day period, the balance of the purchase price is charged to the customer's credit card. The customer is then provided the manufacturer's registration card. Defendant maintains that its store policy does not provide for extension of the five-day return period.

The parties dispute whether defendant's practice under its Deferred Billing Plan runs afoul of the Act's rental prohibition. In this respect, plaintiffs submit evidence as to defendant's operations and implementation of the Deferred Billing Plan. Plaintiffs also submit an analyses and evidence of Deferred Billing Plan transactions for a number of their copyrighted software programs in an attempt to show that these transactions rarely result in actual sales. Beside disputing plaintiffs' portrayal of defendant's operations, defendant contends that plaintiffs' analysis is flawed because many of the transactions analyzed by plaintiffs were, in fact, rental transactions not Deferred Billing Plan transactions. Defendant admits that these transac-

tions rarely result in an actual sale, but contends that the numbers and statistics compiled by plaintiffs are meaningless, as they reflect defendant's liberal return policy not whether any given transaction constitutes a "sale" or a "rental."

Moreover, defendant challenges plaintiffs' request for preliminary injunctive relief on the ground that plaintiffs were aware of defendant's Deferred Billing Plan practice at least two and one-half years before they commenced this action on May 25, 1993, and did not apply for preliminary injunctive relief until eight months later, when they filed their initial moving papers on January 25, 1994. Subsequently, the motion was fully submitted and the parties appeared for oral argument on the motion in April 1994. As for plaintiffs' alleged delay, defendant contends that plaintiffs are members of a trade group, the "Software Publishers Association" (the "SPA"), the alleged driving force behind this law suit. The SPA, according to defendant, was aware of defendant's purportedly illegal rental activities since at least 1991.

In addition, defendant contends that plaintiffs have brought this motion for "improper strategic reasons," namely, to prevent defendant from asserting defenses by imposing "economic strain and hardship" on defendant, and in response to a motion by defendant to compel certain discovery. Defendant's Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction, at 13.

In response, plaintiffs contend they did not unreasonably delay in bringing suit or in filing this motion. In this respect, they claim that preparation of their motion papers was begun well before defendant filed a motion to compel discovery, but admit that the motion was "prompted by Global's attempt to use collateral matters, such as the threat of an antitrust counterclaim, to delay a trial on the merits." Plaintiffs' Reply Memorandum in Support of Their Motion for a Preliminary Injunction ("Pls. Reply Mem."), at 12. In addition, they argue that "even if the SPA's knowledge of Global's activities were imputed to the plaintiffs, this suit was filed within 18

additional computer software programs and others which they allege Global has infringed.

Global has filed papers in opposition to the motion, and plaintiffs reply is expected shortly.

months after they first became aware of Global's illegal rental activities in November 1991." *Id.* at 9.

Since the time this motion was fully submitted the parties have completed discovery, and this case has been marked ready for trial.

## II. *DISCUSSION*

■ To obtain injunctive relief, the moving party must show (a) irreparable harm, and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits and the balance of the hardships tips decidedly in favor of the moving party. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979); *see, e.g., Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985) (copyright infringement case).

■ Irreparable harm normally will be presumed in a copyright infringement case if the moving party can show a reasonable likelihood of success on the merits. *See Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). In other words, generally, "the plaintiff's burden for obtaining a preliminary injunction in copyright cases collapses to showing likelihood of success on the merits, without a detailed showing of danger of irreparable harm." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* ¶ 14.06[A], at 14–84 to –85 (1993) (footnotes omitted).

■ However, as noted above, defendant argues that plaintiffs' motion should be denied because plaintiffs unreasonably delayed in bringing this motion. Even though defendant contends that plaintiffs learned of defendant's allegedly infringing activities over two and one-half years before they commenced this action on May 25, 1993, it appears that the earliest plaintiffs could have been aware of defendant's infringing activities by use of the Deferred Billing Plan was in March 1991 (when that plan was implemented), just over two years prior to this action. Nevertheless, even if the delay in commencing this action is significantly less

than defendant contends, plaintiffs do not adequately explain the delay. Though the Court recognizes that some of the delay must have been attributable to plaintiffs' efforts to sufficiently investigate defendant's practices and secure sufficient evidence to commence an action and bring a preliminary injunction motion, the delay presented far exceeds the time reasonably necessary to accomplish that task.

■ Plaintiffs expend considerable effort in arguing that their delay does not warrant denying their motion for a preliminary injunction because defendant has not shown prejudice from the delay. However, plaintiffs rely on cases addressing the effect of delay on a request for permanent injunctive relief, and apparently ignore cases addressing the effect of delay in applying for preliminary injunctive relief. Contrary to plaintiffs' argument, the period allowed to elapse prior to seeking a preliminary injunction need not rise to the level of laches to bar preliminary injunctive relief. *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir.1985). *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985). As the Second Circuit stated in *Majorica,* a trademark infringement case:

> Lack of diligence, standing alone, is insufficient to support a claim of laches; the party asserting the claim also must establish that it was prejudiced by the delay. *Lack of diligence, standing alone, may, however, preclude the granting of preliminary injunctive relief,* because it goes primarily to the issue of irreparable harm rather than occasioned prejudice. "Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and *such delay alone may justify denial of a preliminary injunction* for trademark infringement."

*Majorica,* 762 F.2d at 8 (quoting *Citibank,* 756 F.2d at 276; emphasis added).

As for the effect of delay on a request for preliminary injunctive relief, the Second Circuit in *Citibank* stated:

Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.

*Citibank,* 756 F.2d at 276. In *Citibank,* a trademark infringement case, the Second Circuit vacated an order granting a preliminary injunction based on a nine-month delay by the plaintiff Citibank in seeking preliminary injunctive relief. After analyzing the evidence of Citibank's delay, the court concluded: "[Plaintiff's] failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *Id.* at 277 (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y.1979)).

Significant delay has also been held to bar preliminary injunctive relief in copyright infringement cases. *See, e.g., Cuddle Wit, Inc. v. Chan,* No. 89 Civ. 7299, 1989 WL 151267, slip op. (S.D.N.Y. Dec. 1, 1989) (seven-month delay in instituting copyright infringement action and seeking preliminary injunctive relief sufficient to deny preliminary injunction); *American Fabrics Co. v. Lace Art, Inc.,* 291 F.Supp. 589, 592 (S.D.N.Y.1968) (delay in instituting action and bringing on a preliminary injunction motion found adequate reason in and of itself to deny preliminary injunction in a copyright case).

In this Court's view, plaintiffs' extensive delay in bringing this motion for a preliminary injunction undercuts any claim of urgency to the preliminary relief now sought. *Citibank,* 756 F.2d at 277; *see Cuddle Wit, supra,* 1989 WL 151267 at *1. Plaintiffs claim that this motion was "prompted by defendant's attempt to use collateral matters, such as the threat of an antitrust counterclaim, to delay a trial on the merits," Pls.Reply Mem. at 12, does not justify plaintiffs' extensive delay. In any event, it does not appear that defendant has engaged in dilatory tactics. In fact, the parties have completed discovery and are ready for trial.

Because the parties are prepared for trial and because of the apparent importance of the issues raised in this case, the parties are directed to contact the Court to schedule an immediate trial of this case. At that time, the Court will schedule a conference to address plaintiffs' motion to amend the complaint once that motion is fully briefed.

### III.  *CONCLUSION*

For the reasons above, plaintiffs' motion for a preliminary injunction is denied. The parties are directed to contact the Court to schedule an immediate trial.

SO ORDERED.