**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3399
_____

SCOTT LANIN; LISA LANIN,
Appellants,

v.

THE BOROUGH OF TENAFLY; THE TENAFLY BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 12-cv-02725)
District Judge: Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 12, 2013

Before: RENDELL, FISHER and GARTH, Circuit Judges

(Opinion filed: March 12, 2013)
_____

OPINION
_____

PER CURIAM

Appellants Scott and Lisa Lanin appeal an order of the District Court denying their

motion for a preliminary injunction. For the reasons that follow, we will affirm.

1

The Lanins, married residents of Tenafly, New Jersey, live on Lower Downey Drive, a public two-way street. Their house is located near a public elementary school. In June, 2010, the Borough of Tenafly adopted Ordinance No. 10-19, which turned Lower Downey Drive into a one-way street going eastbound and past the school during the school day, 8:00 a.m. to 4:00 p.m. The Borough also adopted Ordinance No. 10-20, which eliminated parking on Upper Downey Drive and shifted more cars onto Lower Downey Drive.

On May 8, 2012, the Lanins filed suit pro se under state law and 42 U.S.C. § 1983 in the United States District Court for the District of New Jersey.[1] The Lanins raised numerous federal constitutional and state law claims, including a claim that their rights to substantive due process and to be free from unreasonable seizures had been violated by the Borough's and Board of Education's actions in depriving them of the right to freely travel on Lower Downey Drive. They later filed an amended complaint. Among other things, the Lanins complained that, after the passage of Ordinance 10-19, they (and eight other similarly situated families) could no longer exit their driveway, turn west on Downey Drive, and thereby avoid the school and its traffic altogether. Instead, as a result of the ordinance and the particular way that it was being implemented, the Lanins were forced to proceed eastbound, and, during the morning drop-off and afternoon pick-up, merge into heavy school traffic, where they would then make the same loop onto and off

---

[1] Mr. Lanin is a licensed attorney in the State of New York.

2

of school property that parents make when they drop their children off at school. The Lanins alleged that the trip is time-consuming and wasteful, and that their property has been devalued as a result of the traffic scheme. Prior to Ordinance 10-19, the school used the traffic circle on its own property in the front of the school for drop-off and dismissal of students.

Mr. Lanin, who suffers from juvenile diabetes and wears an insulin pump, also sought an injunction in the amended complaint under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., to prevent the Borough and Board from constructing a sidewalk adjacent to his property, which, he contended they would inevitably neglect to maintain and keep accessible to persons with disabilities. Moreover, he contended that Ordinance 10-19 would interfere with the free passage of emergency vehicles to and from his home.

On July 30, 2012, the Lanins filed a motion for a temporary restraining order or preliminary injunction, Fed. R. Civ. Pro. 65, and numerous supporting affidavits. In a supporting brief, the Lanins cited our decision in Lutz v. City of York, 899 F.2d 255 (3d Cir. 1990) (right to move freely about one's neighborhood by automobile is "implicit in the concept of ordered liberty" and "deeply rooted in the Nation's history" but cruising ordinance was reasonable time, place and manner restriction on right of localized intrastate travel), and noted that section 1983 applies to municipalities under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978).

On the same day the motion was filed, the District Court held a hearing. The Lanins appeared, as did counsel for the Borough and counsel for the Board of Education. At the hearing, Mr. Lanin answered the District Court's questions about the basis for federal subject matter jurisdiction by expressly noting the right to substantive due process and our decision in Lutz. (N.T., 7/30/12, at 3.) The court, in turn, expressed an interest in the Lanins' Fourth Amendment unreasonable seizure argument. See id. at 5 The court then expressed considerable doubt about whether the Lanins could show immediate irreparable harm, given that Ordinance 10-19 was enacted back in June, 2010. Mr. Lanin explained that, initially, he was led to believe that the changes were temporary, but in April, 2012, he realized they were not temporary when the Borough began to construct a particular sidewalk. See id. at 8-10.

Counsel for the Borough then argued that the Lanins simply wanted to prevent the construction of the sidewalk, that the matter had no federal constitutional significance, that the traffic scheme was only a minor inconvenience for the affected residents of Lower Downey Drive, and that the school's traffic scheme was necessary for the safety of children, as established by a consulting report the Borough had obtained. Counsel also stated that Borough police had chosen to direct all traffic, including non-school traffic, onto school property; the ordinance itself did not require this redirection of traffic. See id. at 17-18. On rebuttal, Mr. Lanin disputed the assertion that the inconvenience was minor and stated that there are times when Lower Downey Drive "is blocked off for several hours in the morning and in the afternoon. This is not about inconvenience. This

4

is about the total deprivation of the use of that street." Id. at 21. Mrs. Lanin noted that she is a working mother and "[t]hose 45 minutes in the morning and the afternoon is a time that I most use that public road." Id. at 27.

Following argument, the District Court denied the motion for a preliminary injunction and explained the decision on the record. The court questioned whether it had jurisdiction, but ruled that the Lanins had not shown a reasonable likelihood of success on the merits because the Borough's interest in the safety of school children outweighed the Lanins' interests. But the "bigger issue" for the court was immediate irreparable harm. Id. at 33. The District Court held that the Lanins had not made the required showing because Ordinance 10-19 was enacted in June, 2010, and they waited two years before seeking a preliminary injunction. The court was not convinced that the impending construction of a sidewalk was sufficient to show that they would be immediately irreparably harmed. The next day the District Court issued a written order denying the Lanins' motion for the reasons set forth on the record.

The Lanins appeal. We have jurisdiction to review an order denying a motion for a preliminary injunction under 28 U.S.C. § 1292(a)(1). In their brief, the Lanins contend that the District Court erred (1) in denying them an injunction to allow them to use Lower Downey Drive "in at least one direction to the west;" (2) in considering irreparable harm because the traffic scheme is invalid and *ultra vires*; (3) in failing to make findings of fact and conclusions of law, Fed. R. Civ. Pro. 52(a); and (4) in failing to identify any level of scrutiny to test the constitutionality of Ordinance 10-19. See Appellants' Brief, at 3-4.

The Borough has noted that, "[i]nasmuch as the existing traffic pattern is the result of ordinances adopted by the Borough and a temporary roadblock enforced by members of its police department, the task of defending this appeal properly lies with the Borough, not the Board." Appellee's Brief, at 1 n.1.

We will affirm. The District Court assumed, for the purpose of deciding the motion for a preliminary injunction, that federal subject matter jurisdiction was not lacking. Any argument to the contrary is not supported by the record. We are also satisfied that the District Court properly considered Borough counsel's assertions and argument relating to the reasons for the traffic scheme, cf. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"). And we are satisfied that the District Court's decision and the full hearing transcript collectively provide sufficient factual findings and conclusions of law to give us a clear understanding of the decision, see H. Prang Trucking Co., Inc. v. Local Union No. 469, 613 F.2d 1235, 1238 (3d Cir. 1980), and allow for meaningful appellate review.

We exercise plenary review over the District Court's conclusions of law and its application of the law to the facts, see Marco v. Accent Publishing Co., 969 F.2d 1547, 1548 (3d Cir. 1992). Findings of fact are reviewed for clear error, see Oberti by Oberti v. Board of Education of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir.1993), which occurs when we are "left with a definite and firm conviction that a

6

mistake has been committed," <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573 (1985). As a practical matter, our scope of review tends to be narrow because "the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing . . . [that] is the responsibility of the district judge." <u>Frank's GMC Truck Center, Inc. v. General Motors Corp.</u>, 847 F.2d 100, 101-02 (3d Cir. 1988) (quoting <u>United States Steel Corp. v. Fraternal Ass'n of Steelhaulers</u>, 431 F.2d 1046, 1048 (3d Cir. 1970)).

Regardless of their claimed entitlement to a permanent injunction at the conclusion of this case, the Lanins were required to establish the need for a *preliminary* injunction. In ruling on the Lanins' motion for a preliminary injunction, the District Court was required to consider: (1) the likelihood that they will prevail on the merits of their amended complaint; (2) the extent to which they are being irreparably harmed by the conduct complained of; (3) the extent to which the Borough of Tenafly and Tenafly Board of Education will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. <u>See</u> <u>Duraco Products, Inc. v. Joy Plastic Enterprises</u>, 40 F.3d 1431, 1438 (3d Cir. 1994). All four factors must favor preliminary relief. <u>See</u> <u>id.</u>

We affirm on the basis of the District Court's irreparable harm determination. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." <u>Hohe v. Casey</u>, 868 F.2d 69, 72 (3d Cir. 1989) (internal quotation marks removed). "[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." <u>Citibank, N.A. v. Citytrust</u>, 756

7

F.2d 273, 275 (2d Cir. 1985). Delay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." Id. The traffic scheme challenged by the Lanins was adopted on June 22, 2010 and has continued to impact them during the school year in exactly the same fashion since that time, and yet they did not move for a preliminary injunction until July 30, 2012. The District Court properly relied on their two-year delay in seeking a preliminary injunction as sufficient proof that the risk of immediate irreparable harm did not exist.

When the District Court asked the Lanins what had changed during the intervening two-year period, they pointed to the impending construction of the sidewalk as proof positive that their portion of Lower Downey Drive would never again be a two-way road. (N.T., 7/30/12, at 8.) Mr. Lanin said that "[t]he last thing we wanted to do was to file a lawsuit and we waited until there was no other alternative." Id. We note that delay may be excused where the party seeking a preliminary injunction delays only in the reasonable belief that negotiations may resolve the dispute, see Atari Corp. v. Sega of America, Inc. 869 F. Supp. 783, 790 (N.D. Cal. 1994), but, even applying that rule here, the proceedings below still amply support the District Court's conclusion that the Lanins will not suffer irreparable harm before a decision on the ultimate merits of their case can be reached.

The Lanins argue that they were not required to prove irreparable injury because their case involves irreparable injury per se. They argue that the District Court erred by requiring them to prove irreparable injury because they have shown interference with

8

their fundamental right to travel, see Appellant's Brief at 53-54, but "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction," Hohe, 868 F.2d at 73. A party seeking a preliminary injunction must ordinarily prove irreparable injury, see id.; the Lanins' case does not warrant an exception to this requirement. The Lanins also argue that they are not required to prove irreparable injury because the Borough's traffic scheme is invalid and *ultra vires*, citing our decision in Office of the Comm'r of Baseball v. Markell, 579 F.3d 293 (3d Cir. 2009). See Appellants' Brief, at 24. In Markell, we found it unnecessary on appeal to "consider the parties' arguments regarding irreparable harm and the balancing of the equities," 579 F.3d at 300 n.4, because we reached the merits of the appeal. Markell reflects our decision about what issues we needed to reach on appeal; it did not hold that a party seeking a preliminary injunction at the trial court level need not prove irreparable harm.

Because the District Court properly denied the Lanins' motion for a preliminary injunction on the basis of their failure to show irreparable harm, and because all four factors must favor preliminary relief, see Duraco Products, 40 F.3d at 1438, we find it unnecessary to reach the "likelihood of success on the merits" issue. However, we note that the Lanins contend that, in crediting the Borough's safety arguments, the District Court *appears* to have applied only rational basis scrutiny in finding Ordinance 10-19 legitimate. Lutz says intermediate scrutiny is the most generous standard that could apply to the right to intrastate travel. In Lutz, we explained that:

9

> Not every governmental burden on fundamental rights must survive strict scrutiny…. We believe that reviewing all infringements on the right to travel under strict scrutiny is just as inappropriate as applying no heightened scrutiny to any infringement on the right to travel not implicating the structural or federalism-based concerns of the more well-established precedents. For this conclusion, we rely heavily on the time, place and manner doctrine so firmly entrenched in the jurisprudence of free speech…. [S]tate and local governments must enjoy some degree of flexibility to regulate access to, and use of, the publicly held instrumentalit[y] of … travel.

899 F.2d at 269.

The Lanins' case was reassigned to a new District Judge following the denial of their motion for a preliminary injunction. Because our review here is narrow, we leave all issues relating to the applicability of Lutz to the newly assigned District Judge to address in the first instance.

For the foregoing reasons, we will affirm the order of the District Court denying the Lanins' motion for a preliminary injunction.